UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KEVIN WEAVER                                CIVIL ACTION NO. 17-cv-0249

VERSUS

HORSESHOE ENTERTAINMENT          MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Kevin Weaver ("Plaintiff") slipped and fell in a bathroom at the Horseshoe Hotel and Casino in Bossier City, Louisiana. Plaintiff managed to catch himself before he hit the floor, but he alleges that he injured his knee during the incident. Plaintiff filed suit against Horseshoe in state court, and Horseshoe removed the case based on diversity jurisdiction.

The parties filed written consent to have the case decided by the undersigned Magistrate Judge, and the matter was referred pursuant to 28 U.S.C. § 636(c). Before the court is Horseshoe's Motion for Summary Judgment (Doc. 17) that challenges Plaintiff's ability to present evidence that Horseshoe either created or had actual or constructive notice of the condition that caused Plaintiff to slip. For the reasons that follow, the motion will be granted.

**Applicable Louisiana Law**

Under Louisiana law, a merchant owes a duty to all persons who use its premises "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). Regardless of a merchant's affirmative duty to keep the

premises in a reasonably safe condition, a merchant is not the insurer of the safety of his patrons. Noel v. Target Corp. of Minn., 2007 WL 2572308, *1 (W.D. La. 2007), citing Jones v. Brookshire Grocery Co., 847 So. 2d 43, 49 (La. App. 2d Cir. 2003). To impose liability on a merchant under the statute, the claimant has the burden of proving all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) *The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence*.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. R.S. 9:2800.6(B). Horseshoe's motion challenges Plaintiff's ability to present evidence to support the emphasized elements of the statute.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes

demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Evidence**

Plaintiff and a co-worker visited the Horseshoe after work one afternoon.  The two men walked down the main hall and stopped to use a restroom in the public area, just before the point where identifications are checked to enter the casino area.  An employee described the floor in the bathroom as brown tile.  Plaintiff, who also described the floor as tile, testified in his deposition that he entered the bathroom "and as I walked towards the urinal, I just slipped on a very, very slippery substance."  Plaintiff testified that his legs came from under him and "put a twist on" one knee, but he managed to grab a railing that separated the urinals and stopped himself from actually hitting the floor.  He said he did not notice anything on the floor as he walked up to the urinal, and he is not aware that his co-worker saw anything.

Plaintiff was asked if he knew what the substance was that he slipped in.  He answered, "No, sir."  He said he looked down at the area, but he is still "not sure" what caused the slip.  Counsel asked if he could see anything on the ground afterward. Plaintiff said: "You have to actually walk up on it and actually look down at the floor and you can see that it was a substance on the floor."  He said, "It wasn't no puddle, so it made me believe that it wasn't water, but it was real slippery," and what he felt on the bottom of his shoe was "very, very slippery, so just not quite sure."  Counsel summarized that, to the best

demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Evidence**

Plaintiff and a co-worker visited the Horseshoe after work one afternoon.  The two men walked down the main hall and stopped to use a restroom in the public area, just before the point where identifications are checked to enter the casino area.  An employee described the floor in the bathroom as brown tile.  Plaintiff, who also described the floor as tile, testified in his deposition that he entered the bathroom "and as I walked towards the urinal, I just slipped on a very, very slippery substance."  Plaintiff testified that his legs came from under him and "put a twist on" one knee, but he managed to grab a railing that separated the urinals and stopped himself from actually hitting the floor.  He said he did not notice anything on the floor as he walked up to the urinal, and he is not aware that his co-worker saw anything.

Plaintiff was asked if he knew what the substance was that he slipped in.  He answered, "No, sir."  He said he looked down at the area, but he is still "not sure" what caused the slip.  Counsel asked if he could see anything on the ground afterward. Plaintiff said: "You have to actually walk up on it and actually look down at the floor and you can see that it was a substance on the floor."  He said, "It wasn't no puddle, so it made me believe that it wasn't water, but it was real slippery," and what he felt on the bottom of his shoe was "very, very slippery, so just not quite sure."  Counsel summarized that, to the best

of Plaintiff's knowledge, it was "something slippery, but you have no idea what it actually was?" Plaintiff answered, "Yes, sir." Plaintiff was asked again if he knew what the substance was or where it came from, and he said no. He also said he had no idea how long the substance might have been on the floor.

Plaintiff testified that he did not use his hand to feel the substance on the floor, but he did feel the sole of his sneakers, and, "It felt like a greasy, clear substance." He did not try to smell it, but he said it definitely was not water and did not appear to be urine or a soft drink.

Plaintiff was asked if it appeared "to be like some type of chemical?" He replied, "To me, I thought it was like a chemical. Maybe a cleaning supply or something." He added that it was clear, and, "You couldn't see it unless you actually walked up on it." Plaintiff was cross-examined about his supposition that the substance might be a chemical. Plaintiff agreed with counsel that what he said earlier was a "complete guess" and that he had "absolutely nothing to support that statement."

Michael Golden, a Horseshoe supervisor, was the first employee on the scene after the incident, and he prepared a written report that was reviewed at his deposition. He wrote in the report that he looked at the urinal Plaintiff was near and saw "what appeared to be a few drops of liquid directly under the urinal." He did not see any marks on the floor from Plaintiff's shoes sliding.

Roshun Milton testified at a deposition that he is a public area cleaner and part of a crew that cleans the Horseshoe's restrooms and lobby area. He was working at the time of the incident. Mr. Milton testified that he checked that bathroom about every 15 or 20

minutes, and he had checked it that day at least once, if not several times, before the incident. He said he was not aware of any problems with the bathroom, and he would have cleaned any problem he saw. Mr. Milton was asked if he checked around the urinals when he did his frequent inspections, and he said, "That's the first thing I do."

Ron Prelow, another Horseshoe employee, testified that he and Mr. Milton checked the area for "slipperiness." They checked with their feet, but the floor did not seem slippery. Mr. Prelow said that there is a wet floor sign always stationed at the entrance to the bathroom, and there will be at least one other sign by the toilets. He said that there was a wet floor sign at the door on the date of the incident.

**Analysis**

Horseshoe challenges Plaintiff's ability to present evidence of the element of his claim that Horseshoe "either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence." Plaintiff does not offer any direct argument that Horseshoe had actual notice of the condition prior to the occurrence, and there is zero summary-judgment evidence that Horseshoe of any such prior knowledge of a substance on the floor that Plaintiff slipped on. Accordingly, Plaintiff has not created a genuine dispute of material fact with respect to whether Horseshoe had actual prior notice that could give rise to liability under the statute.

As for constructive notice, a merchant is presumed to have constructive notice of the condition if "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1). A claimant relying on the constructive notice element of Section

9:2800.6(b)(2) "must come forward with *positive evidence* showing that the damage-causing condition existed for *some period of time*, and that such time was sufficient to place the merchant defendant on notice of its existence." White v. Wal-Mart Stores, Inc., 699 So.2d 1081, 1082 (La. 1997) (emphasis added). The Fifth Circuit has firmly applied this requirement in upholding summary judgment in favor of merchants. Derousselle v. Wal-Mart Louisiana, LLC, 701 Fed. Appx. 349, 350-51 (5th Cir. 2017).

Plaintiff has not pointed to any positive evidence—or offered so much as speculation—that the alleged substance on the bathroom floor was there for some period of time sufficient to place Horseshoe on notice of its existence. There is evidence that Mr. Milton often inspected and cleaned the area, but "[t]he presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." La. R.S. 9:2800.6(C)(1). There has not been any such showing. Plaintiff has not created a genuine dispute of material fact with respect to whether Horseshoe had constructive notice of a substance that could give rise to liability under the statute.

Plaintiff's only direct argument in his opposition to Horseshoe's motion for summary judgment is a contention that Horseshoe employee Roshun Milton created the condition. Plaintiff points to his speculative testimony that the slippery substance was perhaps a cleaning solution. Plaintiff then points to Mr. Milton's testimony that he went in the bathroom several times each day to clean it. Plaintiff concludes that the "natural inference is that the condition which caused the fall resulted from the actions of the

defendant's employee, namely Roshun Milton, because the public does not normally carry cleaning supplies/chemicals with them into public areas."

This speculation is not sufficient to create a genuine dispute of material fact that would preclude summary judgment for Horseshoe. Plaintiffs who have offered similar speculation or assertion, without actual probative evidence, have seen their claims dismissed on summary judgment. In <u>Bearb v. Wal-Mart Louisiana, Ltd.</u>, 534 Fed. Appx. 264 (5th Cir. 2013), the plaintiffs offered "only speculation and their own unsubstantiated statements" to support their claims that the merchant created a wet condition on the floor from either a leaking skylight or wet shopping carts. The Fifth Circuit affirmed summary judgment for the merchant, noting "the absence of any *facts* in the record to support their claims" of how the water got on the floor.

Similarly, the plaintiffs in <u>Mohammad v. PF Chang China Bistro</u>, 548 Fed. Appx. 236 (5th Cir. 2013) speculated that water on the floor was caused by employees tracking substances from the kitchen. The Fifth Circuit affirmed summary judgment for the merchant. The Court reasoned that merely providing evidence that liquid sometimes ends up on the floor of the kitchen provides no evidence that the liquid in question was transmitted from the kitchen to the hallway on the soles of an employee's shoes. "Mere assertions, without significant probative evidence, are not sufficient to survive summary judgment." <u>Mohammad</u>, 548 Fed. Appx. at 238. A final example is <u>Francis v. Brookshire Grocery Company</u>, 2017 WL 3272374 (W.D. La. 2017), in which the plaintiffs could not defeat summary judgment with their mere speculation that the chicken blood on which the customer slipped was created by a store employee.

These decisions demonstrate that a plaintiff's speculation will not overcome a summary judgment challenge. Plaintiff's theory in this case relies on at least two facts that are supported by nothing but a guess or speculation: (1) there was a cleaning chemical on the bottom of Plaintiff's shoe after he slipped and (2) a Horseshoe employee placed or spilled the chemical on the floor. There is no positive and probative evidence of either of those facts.

**Conclusion**

Horseshoe met its initial burden of pointing to the parts of the record that it believes demonstrate Plaintiff cannot prove that Horseshoe either created or had actual or constructive notice of the condition which caused Plaintiff to slip. The burden then fell to Plaintiff to demonstrate the existence of a genuine dispute of a material fact. Plaintiff offered no evidence beyond his speculation that a Horseshoe employee created the condition, and he pointed to no evidence or argument to support a finding that Horseshoe had actual or constructive notice of the condition prior to the incident. Horseshoe is, accordingly, entitled to summary judgment. Horseshoe's **Motion for Summary Judgment (Doc. 17)** is **granted**, and judgment for Horseshoe will be entered.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of January, 2018.



Mark L. Hornsby
U.S. Magistrate Judge